UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| AMY DENISE ASHE | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) Case No: 1:16-cv-399 |
| v. | ) |
| | ) Judge Christopher H. Steger |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**I.  Introduction**

Plaintiff seeks judicial review pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), of the denial by the Commissioner of the Social Security Administration ("SSA") of her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 12]. For the reasons stated herein, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 8] shall be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 15] shall be **GRANTED**; and the decision of the Commissioner shall be **AFFIRMED**. Judgment in favor of Defendant shall be entered.

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security when this action was initiated. Nancy A. Berryhill has since assumed that role. Accordingly, the names have been changed. Fed. R. Civ. P. 25(d).

1

## II. Background

### A. Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434. (Tr. 171-78). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the SSA. Plaintiff's claim was denied and she requested a hearing before an administrative law judge ("ALJ"). (Tr. 135). On May 28, 2015, following a hearing, the ALJ found that Plaintiff was not disabled. (Tr. 11-27). On August 4, 2016, SSA's Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. Plaintiff filed a complaint seeking review in this Court on October 6, 2016, which the Commissioner answered. Subsequently, Plaintiff filed a motion for judgment on the administrative record [Doc. 8], and the Commissioner filed a motion for summary judgment [Doc. 15]. Both motions are ripe for review.

### B. The ALJ's Findings

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since September l, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post fracture in right foot, left hip pain, status post kidney stones and an adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b): except the claimant can stand and/or walk for 4 hours of an 8 hour workday; she can occasionally use the right lower extremity for foot controls; she can occasionally balance, stoop, crawl, and use ramps and stairs; she cannot climb ladders, ropes or scaffolds; and she must avoid moderate exposure to hazards at work. The claimant can maintain concentration, persistence, and pace for 2 hours at a time, 8 hours a day, and 40 hours per week performing simple and detailed work; and she can occasionally interact with the general public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 3, 1973, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

### C. Relevant Facts

#### 1. Plaintiff's Age, Education, and Past Work Experience

At the time of the hearing before the ALJ on April 15, 2015, Plaintiff was 41 years old.

She was 38 years old at the time of her alleged onset of disability on September 1, 2012, and she has no past relevant work. She completed the eleventh grade and subsequently earned her General Education Development high school equivalency diploma. She also has an unexpired cosmetology license. (Tr. 32, 171).

### 2. Plaintiff's Testimony and Medical History

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

## III. Analysis

### A. Standard of Review

To establish disability under the Social Security Act, a claimant must establish that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive

finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is

not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

### B. Discussion

Plaintiff presents the following issues for review:[2]

(1) Whether the ALJ failed to apply proper legal standards in finding that Plaintiff's testimony was not fully credible, and whether substantial evidence supported the decision;

(2) Whether the ALJ applied the proper legal standard in determining that Plaintiff did not meet a specific listing in the Social Security regulations, and whether the decision was supported by substantial evidence; and

(3) Whether the ALJ applied the proper legal standard in assessing Plaintiff's residual functional capacity ("RFC"), and whether the decision was supported by substantial evidence.

These issues will be discussed in the order presented immediately above.

**(1) Whether the ALJ failed to apply proper legal standards in finding that Plaintiff's testimony was not fully credible, and whether substantial evidence supported the decision.**

Plaintiff challenges in several respects the ALJ's finding that her own statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." First, Plaintiff argues that, contrary to the ALJ's findings, her testimony regarding the limitations caused by the pain in her hip, back, and lower extremities was entirely consistent with

---

[2] The issues have been reordered and reworded for clarity.

the medical evidence. She asserts that she credibly testified that the pain in her right foot greatly affects her ability to stand; that the pain has migrated to her leg and knee and causes additional pain in her left hip and back; that some of the hardware implanted in her foot is visibly loose; and that screws holding the plates in place keep backing out and stick up under the skin of her foot.

Plaintiff contends that numerous x-rays support her testimony by demonstrating chronic abnormalities, including fractures and the existence of hardware, some of which is broken or loose. She contends that medical examinations show decreased range of motion in her right foot, as well as generally erythema (reddening of the skin) and pain when bearing weight. Additionally, she contends, medical evidence demonstrates bone spurs on her right knee that required multiple surgeries; left knee pain as a result of compensating for her right foot and leg pain; and painful swelling in her legs, affecting her ability to stand and walk. She asserts that the ALJ erred by failing to include her knee pain as a severe impairment, failing to give her testimony great weight, and failing to find that she was disabled. Plaintiff additionally asserts that the ALJ drew an inappropriate reference regarding her credibility from her sporadic history of medical treatment without first considering that she lacked health insurance and could not afford medical care, as required by SSR 96-7p.[3]

Plaintiff also argues that the ALJ mischaracterized the nature, intensity, and frequency of her daily activities. Specifically, she contends that, although she is able to do housecleaning, she can do only a little at a time with rest in between; she can manage medications and finances and

---

[3] SSR 96-7p was superseded on March 28, 2016, by SSR 16-3p. Any differences in the superseding regulation do not affect the arguments at issue here.

speak by phone with family, but those activities do not involve her physical impairments; she can work in the garden, but only with help; she feeds a pet, but only intermittently; and she cannot walk long distances without pain. Plaintiff asserts that her ability to perform simple functions does not indicate an ability to perform substantial gainful activity where those activities are performed only intermittently.

Finally, Plaintiff asserts that the ALJ improperly inferred that a medical record, which noted that a birdbath had fallen on her foot, reflected that she had been performing an activity inconsistent with her asserted limitations. Plaintiff argues that the ALJ should not have reached that conclusion concerning her credibility without first questioning her about the incident.

In her motion for summary judgment, the Commissioner responds that the ALJ evaluated Plaintiff's alleged pain symptoms in accordance with SSR 96-7p, and that the ALJ's determination was supported by the record – specifically, the objective medical evidence; Plaintiff's minimal and conservative treatment; her improvement with treatment; her failure to follow the recommended treatment plan; her daily activities; her own inconsistent statements; and medical opinions. The Commissioner asserts that, contrary to Plaintiff's argument, the ALJ properly evaluated Plaintiff's lack of treatment. Specifically, the Commissioner acknowledges that Plaintiff testified regarding her inability to obtain health insurance; however, the Commissioner disputes Plaintiff's assertion that her lack of health insurance prevented her from seeking medical care by pointing to evidence demonstrating that, even when Plaintiff was working and had additional funds, she sought healthcare only infrequently. The Commissioner also notes that Plaintiff sought treatment when necessary, and that examiners sometimes determined that her medical issues were mild and recommended conservative treatments.

The Commissioner additionally argues that the ALJ's consideration of Plaintiff's daily activities was reasonable and proper, and that the ALJ did not rely solely on Plaintiff's reported activities in determining that she could work. Rather, the ALJ considered the inconsistency between Plaintiff's activities and her alleged limitations as a factor in his credibility analysis. The Commissioner asserts that the ALJ's conclusions are supported by substantial evidence.

A claimant's subjective complaints can support a claim for disability if there is also objective medical evidence of an underlying medical condition in the record. *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). However, an ALJ is "not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* (quotations omitted). An ALJ's credibility determination is afforded great weight, provided it is supported by substantial evidence. *Id.*

The ALJ must follow a two-step process for evaluating an individual's reported symptoms: (1) determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms; and (2) evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. SSR 96-7p. In Step (2), the ALJ must examine the entire case record, including the objective medical evidence; the individual's own statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. *Id.*

Where the degree of an individual's subjective complaints does not match the frequency or extent of treatment sought, the ALJ may find the claimant's statements less credible, but the

ALJ first must consider possible reasons for failing to seek treatment, including, *inter alia*, whether an individual cannot afford treatment and lacks access to free or low-cost services. *Id*.

Here, substantial evidence supports the ALJ's assessment that Plaintiff's subjective complaints were inconsistent with the overall medical evidence. As the ALJ noted, Plaintiff testified that she is unable to work because of pain in her back, hips, right knee, and right foot, and swelling in her right lower extremity. (Tr. 16, 34-44). She testified that it is difficult to stand and walk; that she has been prescribed orthotic shoes but they are too painful to wear; and that her pain increases in bad weather. (Tr. 16, 42-43, 51).

In contrast to Plaintiff's assertions, medical records frequently indicate milder symptoms. As the ALJ noted, medical records from September 2010 indicate Plaintiff underwent fusion of the right first and second metatarsal in her foot, as well as eventual removal of plates and tenolysis of extensor tendons. (Tr. 20, 259). The record shows that, since that time, Plaintiff has been treated for complaints of pain in her lower right extremity. (*See* tr. 20; *also see, e.g.*, Tr. 280, 324, 503). As the ALJ noted, however, x-rays performed in March and June 2011 showed only old healed fractures, with no significant acute fracture or dislocation. (Tr. 20, 324-27, 334-38). Similarly, an ultrasound of the lower extremity in November 2011 showed no deep vein thrombus, and an x-ray of the right knee showed only mild degenerative changes with no acute abnormality. (Tr. 20, 304-05). The ALJ noted that Plaintiff was treated in January 2012 for complaints of pain in her hip and right foot, and was referred to a spine specialist for complaints of popping and pain in her left hip. (Tr. 20, 262-64). Progress notes indicate Plaintiff was diagnosed with Bertolotti's syndrome; that no surgical procedure was necessary; and that she had full range of motion in her left hip and could raise her leg. Those same notes, however, reflected

that an x-ray of her left hip reflected unilateral failure of segmentation at L5-S1 that could be contributing to some mechanical problems. (Tr. 20, 262).

The ALJ noted that Plaintiff sought no further treatment until January 2013, when Plaintiff presented in the emergency room with pain in her right elbow and right foot, and an x-ray of Plaintiff's right foot revealed healed fractures and evidence of previous surgery but no new abnormality. (Tr. 20, 280-84). Plaintiff was prescribed a non-steroidal anti-inflammatory medication and discharged. (Tr. 20, 282). A subsequent x-ray in October 2014, when Plaintiff visited the emergency room for right foot pain after dropping a birdbath on her foot, showed no evidence of acute bony deformity or fracture. (Tr. 20, 504-09).

Notes from a consultative examination in March 2013 indicated that Plaintiff complained of pain in her neck, low back, left hip, and right foot, with radiation of pain to her arms and legs. (Tr. 20, 353). However, the examination results also indicated that Plaintiff ambulated throughout the clinic without noticeable difficulty or gait disturbance; was able to sit and stand and get on and off the examination table unassisted; has normal range of motion at the hips, knees, and ankles; and wears a soft comfortable shoe but otherwise uses no walking assisting devices, splints, or braces. (Tr. 20-21, 353-55). The report noted that Plaintiff had extensive scarring on her right foot, with decreased range of motion of her first metatarsophalangeal joint, and generalized erythema along the dorsal right foot; that she was able to support her weight and balance on her right foot, though she complained of pain; that her straight gait favored her right foot; and that she was able to perform several steps of tandem and heel walking, but could not perform toe walking on the right. (Tr. 21, 355).

The ALJ stated that his decision was made after "careful consideration of the entire

record," including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" under the relevant rules and regulations. (Tr. 21) The ALJ found, first, that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged. (*Id.*). However, the ALJ further found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms was "not entirely credible." (*Id.*).

The ALJ found that, based on the medical evidence, Plaintiff sought only sporadic treatment for her complaints – for example, Plaintiff was treated for foot pain in January 2013, but did not seek further treatment for complaints of pain until October 2014. (Tr. 21, 279-82, 504). The ALJ further noted that, "[s]urely, an individual experiencing debilitating pain would require treatment and medication for such." (Tr. 21).

Although Plaintiff argues that the ALJ made an improper inference regarding credibility based on Plaintiff's sporadic history of medical treatment, the ALJ is permitted to make such an inference, so long as he considers financial or other possible reasons for lack of treatment. *See* SSR 96-7p. The record demonstrates that Plaintiff testified during the hearing that she could not afford health insurance and did not qualify for Tennessee's Medical program, TENNCare, and that her lack of insurance kept her from going to the doctor. (Tr. 35-36); *see* SSR 96-7p (noting that an ALJ may need to question the individual regarding the lack of treatment in, for example, an administrative proceeding).

Substantial evidence also supports the ALJ's determination that Plaintiff's allegations that she is unable to perform work activity were inconsistent with her admissions in the record to various activities – notably, taking care of her small son and pets; preparing meals; doing

laundry; performing household chores; managing medication and finances; working in her garden; walking laps for exercise; grocery shopping; visiting her ailing father; and talking daily by phone or in person with friends or family members. (Tr. 21, 209-16, 227-32, 242-43, 360-61, 377, 393). The ALJ may consider daily activities in evaluating "the intensity and persistence of [a claimant's] symptoms . . . and determining the extent to which [these] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(3)(I); 416.929(c)(3)(i). The activities noted by the ALJ support his determination that Plaintiff's alleged symptoms were inconsistent with her daily activities.

Plaintiff contends that the ALJ made an improper credibility inference based on an October 2014 medical report indicating that Plaintiff sought medical care after dropping a birdbath on her foot. The report provides no additional details of the incident. (Tr. 509). In his decision, the ALJ notes the birdbath incident and a separate May 2013 report indicating that Plaintiff was working in her garden as additional inconsistencies that "do not enhance the claimant's credibility and make it difficult to rely on testimony and reports of record in reaching a conclusion of disability in this case." (Tr. 21, 473, 509). Plaintiff argues that the ALJ should have questioned her about the circumstances of the birdbath incident before relying on it to assess credibility. However, she offers no explanation, in her motion or elsewhere in the record, to refute an inference that, at the time she dropped a birdbath on her foot, she was engaging in an activity inconsistent with the alleged severity of her symptoms. Similarly, she states that the ALJ erred by not determining her knee pain to be a severe impairment, but she provides no argument to support the assertion. Accordingly, I find that the ALJ applied proper legal standards in determining that Plaintiff's testimony was not fully credible, and that substantial

13

evidence supported the decision.

> **(2) Whether the ALJ applied the proper legal standard in determining that Plaintiff did not meet a specific listing in the Social Security regulations, and whether the decision was supported by substantial evidence.**

Plaintiff argues that the ALJ erred in his determination that she failed to meet and/or equal listing sections 1.02 and 1.03. She argues, first, that the ALJ failed to address the criteria for listing 1.02 or determine whether those criteria were met because he erroneously relied in his decision on the criteria for listing 1.04. Plaintiff also argues that the ALJ should have determined that she met the criteria for listings 1.02 and 1.03 because she has major dysfunction in her right foot and metatarsals and cannot ambulate effectively.

Listing 1.03 requires an individual to show "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404 Subpt. P App. 1 §1.03. Ineffective ambulation, is defined in 1.00B2b as: "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*. §1.00B2b.

The regulations explain that, in order to ambulate effectively, individuals must be capable of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and "have the ability to travel without companion assistance to and from a place of employment or school." *Id*. Examples of ineffective ambulation include: the

inability to walk without the use of a walker, two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id.*

The ALJ determined that Plaintiff did not meet the criteria for listing section 1.03 because the record did not show the required degree of limitation, noting that Plaintiff admitted she used a cane only periodically, and it was not medically prescribed. (Tr. 17, 232). Substantial evidence supports the ALJ's determination. As noted above, the results of Plaintiff's March 2013 consultative evaluation indicated that Plaintiff ambulated throughout the clinic without noticeable difficulty or gait disturbance; was able to sit and stand and get on and off the examination table unassisted; and demonstrated normal range of motion except in the cervical spine. (Tr. 20-21, 353-55). Moreover, the record indicates Plaintiff can take part in a variety of daily activities, as noted above. (*See, e.g.,* tr. 209-16, 227-32, 242-43, 360-61, 377, 393, 509).

Plaintiff asserts that she meets the criteria for listing 1.03 based on the medical evidence and her own testimony, but she cites to nothing in the record to support her argument. Although Plaintiff testified that the problems in her foot, knees, hip, and back affect her ability to stand, walk, and otherwise function, the ALJ found her testimony conflicted with other evidence, as discussed above. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff did not meet the listing criteria for 1.03.

As to section 1.02, an individual must show, in relevant part:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross

anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) . . . [w]ith:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.02.

By contrast, listing section 1.04 requires an individual to show, in relevant part: "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root … or the spinal cord." *Id*. §1.04.

Plaintiff correctly argues that the ALJ mistakenly relied on the criteria for listing 1.04 in determining that she did not meet listing 1.02. Specifically, the ALJ states that Plaintiff does not meet the criteria for listing 1.02, but then goes on to state: "The claimant has complained of neck and back pain; however, the record fails to show objective evidence of a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture resulting in compromise of a nerve root or the spinal cord as required in listing 1.02." (Tr. 17). Clearly, the ALJ refers in his findings to criteria found in 1.04, not 1.02. Moreover, the ALJ references Plaintiff's complaints of neck and back pain, suggesting that the ALJ considered the criteria for listing 1.04 in rendering his decision.

The Commissioner concedes the error, but argues that it does not require remand because the ALJ explicitly found that Plaintiff failed to demonstrate that she could not ambulate effectively, and thus, she cannot satisfy at least one of the required criteria for section 1.02. The Commissioner asserts that the ALJ's finding is supported by substantial evidence, and that courts

in this Circuit have upheld determinations regarding 1.02 in similar circumstances.

Although the ALJ found that Plaintiff did not meet the criteria for any listing, he erred by failing to provide an analysis of whether Plaintiff met the proper criteria for section 1.02. Nevertheless, the error is harmless because the ALJ considered the criteria for section 1.03 and explicitly found that Plaintiff failed to demonstrate that she could not ambulate effectively, as defined in 20 C.F.R. Pt. 404 Subpt. B App. 1 §1.00B2b. (Tr. 17). Although ineffective ambulation is not, as the Commissioner argues, an essential element of section 1.02, it is one of two alternative elements that must be met. *See id.* §1.02. Moreover, it is, quite clearly, the alternative element applicable to Plaintiff's case. (*See, e.g.,* tr. 17, 255). Thus, it is a required showing in order for Plaintiff to meet the criteria of listing 1.02. Because the ALJ found that Plaintiff did not show ineffective ambulation as defined by 1.00B2b, Plaintiff cannot meet all the criteria for listing 1.02, and remand is unnecessary. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (noting that an impairment must meet all of the specified medical criteria to match a listing); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (noting that a heightened articulation standard is not required at step three, and the court should not disturb the ALJ's findings "unless we are persuaded that his findings are legally insufficient") (quotations omitted); *Rector v. Astrue*, 2010 WL 4736831 at *6 (E.D. Ky. 2010) (determining that, although the ALJ did not explicitly refer to section 1.02, the ALJ determined that the claimant could ambulate effectively, and thus, it was clear that the ALJ was responding to the plaintiff's argument that he met that listing).

> **(3) Whether the ALJ applied the proper legal standard in assessing Plaintiff's RFC, and whether the decision was supported by substantial evidence.**

17

Plaintiff argues that the ALJ erroneously concluded that she possesses the Residual Functional Capacity ("RFC") to perform light work pursuant to 20 C.F.R. § 404.1567(b). In support of her argument, she asserts that the ALJ erred in assessing her credibility, and by failing to assign greater weight to treating sources. She also asserts that she is unable to perform a full range of sedentary work because she can only sit for 20 to 30 minutes before being in severe pain.

The Commissioner responds that the ALJ evaluated the objective medical and other evidence and Plaintiff's alleged symptoms; and that the ALJ resolved inconsistencies and provided a sufficient narrative discussion to support the RFC. The Commissioner argues that the ALJ considered the medical source opinions and, where the RFC conflicted with a medical source opinion, the ALJ explained why he did not adopt the opinion. The Commissioner contends that the ALJ's determination is supported by substantial evidence and corroborated by the medical opinions of state agency medical consultants, who formulated RFCs with the same or fewer limitations.

An ALJ generally should give more weight to the opinions of treating physicians than to other sources because they are "likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s)" and may provide a perspective not available from objective medical findings alone, or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Nevertheless, the ALJ is not bound by treating physicians' opinions, and they are given great weight only if

supported by sufficient clinical findings and are consistent with the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir.1993).

In his decision, the ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and that he also considered opinion evidence, as required by the relevant rules and regulations. (Tr. 19). The ALJ's credibility finding already has been discussed above. As to the weight given to the opinions of treating physicians, Plaintiff does not explain whose opinion the ALJ improperly discounted, or what that opinion stated. Moreover, Plaintiff sought infrequent medical care, primarily in emergency rooms. Thus, the record lacks the kind of longitudinal perspective a treating physician might provide. *See Wilson*, 378 F.3d at 544.

In his decision, the ALJ detailed many of the medical findings and determined that, because he found Plaintiff's statements regarding her symptoms "not entirely credible," he based his decision "primarily on the medical evidence in the record." (Tr. 19-22). The ALJ noted that he relied for his conclusions on the assessment provided by Frank Pennington M.D., a medical consultant for the SSA, whose assessment substantially comports with the ALJ's findings. (Tr. 22, 100-14). The ALJ stated that he considered the opinion of Dr. William Holland, a consultative examiner, but afforded it only some weight because the limitations stated by Dr. Holland were not consistent with the record as a whole. (Tr. 22, 353-57). The ALJ also stated that he gave great weight to an assessment provided by an expert review psychologist, and some weight to a supporting opinion by a consultative psychological examiner. (Tr. 22). Although Plaintiff argues that she can only sit for 20 to 30 minutes without severe pain, she cites to no medical or other evidence to support her assertion. Moreover, substantial evidence supports the

ALJ's findings regarding Plaintiff's RFC and the accompanying exceptions. (*See, e.g.*, tr. 100-14).

## III. Conclusion

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Plaintiff's Motion for Judgment on the Administrative Record [Doc. 8] is **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 15] is **GRANTED**; and the decision of the ALJ is **AFFIRMED**. Judgment shall be entered in favor of the Defendant.

**ENTER**.

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE